**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**


CLINTON J. SMITH,              )

                               )     Civil Action No. 14 – 714

            Petitioner,     )

                               )     District Judge Cathy Bissoon

              v.                 )     Magistrate Judge Lisa Pupo Lenihan

                               )

JOHN KERESTES and THE        )

ATTORNEY GENERAL OF THE    )

STATE OF PENNSYLVANIA,      )

                               )

            Respondents.


## REPORT AND RECOMMENDATION

**I.       RECOMMENDATION**

Presently before the Court is a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (the "Petition") (ECF No. 1) filed by Clinton J. Smith ("Petitioner"), wherein he challenges his judgment of sentence of life incarceration without parole entered on April 23, 2010 after pleading guilty to first-degree murder and endangering the welfare of a child. For the reasons that follow, it is respectfully recommended that the Petition be denied and that a Certificate of Appealability also be denied.

**II.     REPORT**

**A.     Relevant Background**

As stated by the Superior Court of Pennsylvania, "[Petitioner's] convictions arose from the November 15, 2007 savage beating death of the 9-month-old daughter of [Petitioner's] girlfriend while the mother was at work. The child's horrendous suffering included bite marks,

1

vomiting when [Petitioner] squeezed her stomach, and a spontaneous bowel movement when [Petitioner] put the full weight of his body on her abdomen. There were also indications of sexual molestation." (ECF No. 21-4, p.28), Commonwealth v. Smith, No. 1401 WDA 2011 (Pa. Super. Ct. April 23, 2013). In addition to first-degree murder and endangering the welfare of a child, Petitioner was charged with two counts of involuntary deviate sexual intercourse with a child. (ECF No. 21-1, pp.1-12.) In exchange for pleading guilty to first-degree murder and endangering the welfare of a child, the Commonwealth withdrew the two counts of involuntary deviate sexual intercourse with a child as well as the death penalty. Petitioner's guilty plea was accepted on April 23, 2010, and he was sentenced to life incarceration without parole. He did not file a direct appeal to the Pennsylvania Superior Court.

On November 22, 2010, Petitioner filed a *pro se* "Motion to Vacate Conviction and Sentence" which the trial court treated as a petition filed pursuant to Pennsylvania's Post Conviction Relief Act ("PCRA"). (ECF No. 21-1, pp.26-32.) Petitioner was then appointed counsel for the purposes of filing an amended PCRA petition. (ECF No. 21-1, p.7.)

On April 29, 2011, Petitioner's appointed counsel, Attorney Scott Coffey, filed a "No Merit" letter and a petition to withdraw pursuant to Turner-Finley.[1] (ECF No. 21-1, pp.33-47.) Attorney Coffey was subsequently granted permission to withdraw. (ECF No. 21-1, p.48.)

On May 2, 2011, the trial judge issued a Notice of Intent to Dismiss Petitioner's PCRA petition without conducting an evidentiary hearing, pursuant to Pa.R.Crim.P. 907, which stated the reasons for denying Petitioner post conviction relief. (ECF No. 21-2, pp.1-2.) On May 16, 2011, Petitioner filed a *pro se* objection to the Rule 907 notice, (ECF No. 21-1, pp.3-17), and, on

---

[1] *See* Commonwealth v. Turner, 544 A.2d 927 (Pa. 1988); Commonwealth v. Finley, 550 A.2d 213 (Pa. Super. 1988) (en banc).

July 7, 2011, the trial judge issued a final order dismissing Petitioner's PCRA petition without a hearing, (ECF No. 21-2, p.18).

Petitioner filed a notice of appeal of the denial of post conviction relief on August 1, 2011, (ECF No. 21-2, pp.23-25), and filed an amended notice of appeal on August 29, 2011, (ECF No. 21-2, pp.26-27).  Attorney Christy P. Foreman was appointed to represent Petitioner on October 26, 2011.  (ECF No. 21-1, p.8.)

On February 3, 2012, the trial judge issued an order responding to Petitioner's notice of appeal to the Superior Court.  (ECF No. 21-6, p.29.)  In place of an opinion addressing Petitioner's notice of appeal, the trial judge deferred to his Notice of Intention to Dismiss dated May 2, 2011, which listed the court's reasons for dismissing Petitioner's PCRA petition.

On October 9, 2012, Petitioner, through Attorney Foreman, filed a brief pursuant to Anders v. California, 386 U.S. 738 (1967).[2]  (ECF No. 21-3.)  The Commonwealth responded by filing a brief on October 31, 2012.  (ECF No. 21-4, pp.1-27.)  On April 23, 2013, finding no merit to the issues raised on appeal, the Pennsylvania Superior Court filed a Memorandum Opinion affirming the trial court's order denying Petitioner's PCRA petition and permitting appointed counsel to withdraw.  (ECF No. 21-4, pp.28-33.)

On May 22, 2013, Petitioner filed a *pro se* Petition for Allowance of Appeal with the Pennsylvania Supreme Court, (ECF No. 21-5, pp.1-40), which was denied on September 17, 2013, (ECF No. 21-5, pp.41-43).  Petitioner did not file a Writ of Certiorari with the United States Supreme Court.

---

[2] Citing Commonwealth v. Widgins, 29 A.3d 816, n.2 (Pa. Super. 2011), the Pennsylvania Superior Court accepted the Petitioner's Anders brief in lieu of a Turner-Finley brief, but stated that the "Anders practice pertains to direct appeal; the appropriate practice for withdrawing from a collateral appeal is Turner-Finley."

3

Petitioner filed for habeas relief in the Eastern District of Pennsylvania on April 4, 2013, (ECF No. 1), and his Petition was transferred to this Court on June 4, 2014, (ECF No. 7).  He raises four claims in his Petition, summarized as follows.

1. Petitioner entered into a guilty plea based on trial counsel's erroneous advice that the forensic reports indicated Petitioner's DNA was found on the victim and that seminal fluid from Petitioner was ejaculated into the victim's mouth, rectal orfices, and clothing.

2. Trial counsel provided ineffective assistance of counsel when he advised Petitioner that his prior criminal history could be used against him at the time of trial to show that Petitioner was aggressive and combative toward women.

3. Trial counsel provided ineffective assistance of counsel when he informed Petitioner that the statements of criminal informants Vinetto Cobbs and Jerry Nichols were credible.

4. (a) Petitioner's plea was involuntary, unknowing, and unintelligent because he was under the influence of psychotropic medications at the time of his guilty plea.  (b) Trial counsel provided ineffective assistance for advising Petitioner to deny having taken any medication that would affect his ability to enter into a voluntary plea in order to validate the plea process.

Respondents filed their Answer to the Petition on October 29, 2014.  (ECF No. 21.)

Petitioner filed a Reply to the Answer on November 24, 2014.  (ECF No. 24.)

## B.    Standards Governing Federal Habeas Corpus Review

Under 28 U.S.C. § 2254, "[t]he Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  Errors of state law are not cognizable in a federal habeas action.  *See*, *e.g.*, Priester v. Vaughn, 382 F.3d 394, 402 (3d Cir. 2004) ("Federal courts reviewing habeas claims cannot 'reexamine

state court determinations on state-law questions.'") (quoting Estelle v. McGuire, 502 U.S. 62, 67-68 (1991)).

Amended Section 2254 of the federal habeas corpus statute provides the standard of review for federal court review of state court criminal determinations and provides, in relevant part, as follows:

> (d)  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding.

28  U.S.C. § 2254(d).

Thus, the federal habeas corpus statute circumscribes a federal habeas court's review of a state prisoner's constitutional claim when the state court adjudicated that claim on the merits and denied it.  For the purposes of § 2254(d), a claim has been "adjudicated on the merits in State court proceedings" when a state court has made a decision that finally resolves the claim based on its substance, not on a procedural, or other, ground.  See, e.g., Harrington v. Richter, 131 S. Ct. 770, 784-85 (2011); Robinson v. Beard, 762 F.3d 316, 324 (3d Cir. 2014).  "Section 2254(d) applies even where there has been a summary denial."  Cullen v. Pinholster, 131 S. Ct. 1388, 1402 (2011) (citing Richter, 131 S. Ct. at 786).

## 1. **Exhaustion Requirement**

A provision of the federal habeas corpus statute, 28 U.S.C. § 2254(b), requires a state prisoner to exhaust available state court remedies before seeking federal habeas corpus relief. Specifically, a federal habeas court may not grant a state prisoner's petition for writ of habeas corpus unless he has first presented his federal constitutional claims to the state courts. 28 U.S.C. § 2254(b)(1)(A). This is called the "exhaustion" requirement and it is "grounded in principles of comity; in a federal system, the States should have the first opportunity to address and correct alleged violations of state prisoner's federal rights." Coleman v. Thompson, 501 U.S. 722, 731 (1991). *See also* O'Sullivan, 526 U.S. 838, 842-49 (1999). In order to exhaust a claim, "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." O'Sullivan, 526 U.S. at 844-45. In Pennsylvania, this requirement means that a petitioner in a non-capital case must have presented every federal constitutional claim raised in his habeas petition to the Superior Court either on direct or PCRA appeal. *See*, *e.g.*, Lambert v. Blackwell, 387 F.3d 210, 233-34 (3d Cir. 2004).

## 2. **Procedural Default**

A federal court may be precluded from reviewing claims under the "procedural default doctrine." Gray v. Netherland, 518 U.S. 152 (1996); Coleman, 501 U.S. at 732. Like the exhaustion requirement, the procedural default doctrine was developed to promote our dual judicial system. A state's procedural rules are entitled to deference by federal courts, and a habeas petitioner may not have his claim reviewed if his violation of a state procedural rule

constitutes an independent and adequate state law ground for denial of a federal habeas claim.[3] Fahy v. Horn, 516 F.3d 169, 187 (3d Cir. 2008). A state procedural rule is "independent" if it is interwoven with federal law or dependent upon a federal constitutional ruling. Michigan v. Long, 463 U.S. 1032, 1040-41 (1983). A state procedural rule is "adequate" if it is "firmly established and regularly followed" at the time of the alleged procedural default. Ford v. Georgia, 498 U.S. 411, 424 (1991).

A petitioner whose constitutional claims have not been addressed on the merits due to a procedural default can overcome the default, thereby allowing federal court review, if he or she can demonstrate either: 1) "cause" for the default *and* "actual prejudice" as a result of the alleged violation of federal law; or 2) failure to consider the claims will result in a "fundamental miscarriage of justice." Coleman, 501 U.S. at 750. If cause and prejudice or a fundamental miscarriage of justice is shown, and the default excused, review of a petitioner's claim is *de novo* because the state court did not consider the claim on the merits. Bronshtein v. Horn, 404 F.3d 700, 710 n.4, 715 (3d Cir. 2005).

### a. Cause and Prejudice

To satisfy the cause standard, a petitioner must demonstrate that some objective factor external to the defense impeded his or her efforts to raise the claim in state court. McCleskey v. Zant, 499 U.S. 467, 493 (1991); Murray v. Carrier, 477 U.S. 478, 488 (1986). To show prejudice, a petitioner must demonstrate that the error worked to his actual and substantial

---

[3] State procedural grounds for denying a PCRA claim include, but are not limited to, the PCRA's timeliness requirement, 42 Pa.C.S. § 9545(b), failing to adequately develop the claim in one's briefing, Commonwealth v. Bracey, 795 A.2d 935, 940 n. 4 (Pa.2001); Pa. R .A.P. 2116, 2119(a), and presenting a claim on appeal without having presented it to the lower court, Commonwealth v. Wharton, 811 A.2d 978, 990 (Pa.2002); Pa. R.A.P. 302(a).

disadvantage, infecting his entire trial with error of constitutional dimensions, not merely that the error created a "possibility of prejudice." Carrier, 477 U.S. at 494.

Recently, the United States Supreme Court held for the first time that in states like Pennsylvania, where state law requires that claims of ineffective assistance of trial counsel be raised in an initial-review collateral proceeding (such as the PCRA),[4] a petitioner may be able to establish "cause" sufficient to overcome a procedural default of "a substantial claim of ineffective assistance at trial if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective [under the standard of Strickland v. Washington, 466 U.S. 668 (1984)]." Martinez v. Ryan, 132 S. Ct. 1309, 1320 (2012). The Supreme Court based its decision on what it determined to be an equitable right to seek relief from a procedural default in a federal habeas matter. It did not hold that a petitioner has a constitutional right to counsel in initial-review collateral proceedings such as the PCRA. Martinez, 132 S. Ct. at 1313-21.

**b. <u>Fundamental Miscarriage of Justice</u>**

Where a petitioner cannot make a showing of "cause and prejudice," a federal court may nevertheless consider the merits of his or her unexhausted claims under circumstances in which the failure to adjudicate such claims would result in a "fundamental miscarriage of justice." Coleman, 501 U.S. at 750. This exception to the procedural default doctrine is based on the principle that, in certain circumstances, "the principles of comity and finality that inform the

---

[4] Pennsylvania's procedural rules state that a defendant waives an ineffective assistance of counsel claim unless he or she raises it during the first state collateral review proceeding. Commonwealth v. Grant, 813 A.2d 726, 738 (Pa. 2002) ("[A]ny ineffectiveness claim will be waived only after a petitioner has had the opportunity to raise that claim on collateral review and has failed to avail himself of that opportunity."). The Third Circuit Court of Appeals has held that this state procedural rule is independent of the federal question and adequate to support the judgment. Glenn v. Wynder, 743 F.3d 402, 409 (3d Cir. 2014).

concepts of cause and prejudice 'must yield to the imperative of correcting a fundamentally unjust incarceration.'" Carrier, 477 U.S. at 495 (quoting Engle v. Isaac, 456 U.S. 107, 135 (1982)).

The fundamental miscarriage of justice exception is narrow; the Supreme Court having applied it "to a severely confined category:  cases in which new evidence shows 'it is more likely than not that no reasonable juror would have convicted [the petitioner].'" McQuggin v. Perkins, 133 S. Ct. 1924, 1933 (2013) (alteration in original) (quoting Schlup v. Delo, 513 U.S. 298, 329 (1995)).  Put differently, the exception is only available when a petitioner presents "evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error."  Id. at 1936 (quoting Schlup, 513 U.S. at 316).  In Schlup, the Supreme Court emphasized that "[w]ithout any new evidence of innocence, even the existence of a concededly meritorious constitutional violation is not in itself sufficient to establish a miscarriage of justice that would allow a habeas court to reach the merits of a barred claim."  513 U.S. at 316.

C.     Discussion

1.     Petitioner's claims are unexhausted and procedurally defaulted.

As an initial matter, the Court notes that claims 1 through 3 and claim 4(b) of the Petition are unexhausted because Petitioner failed to raise them in state court.  These claims are also procedurally defaulted because any PCRA petition that Petitioner were to file now would be time-barred by the statute of limitations contained in the current version of the statute.  See 42 Pa. C.S. § 9545(b) (setting a one-year jurisdictional statute of limitations for PCRA actions).  Petitioner even acknowledges as much in his Reply brief to the Respondent's Answer.  (ECF No.

24, at pp.2-4.)   As such, the question now becomes whether Petitioner can overcome the procedural default by showing cause and prejudice or a fundamental miscarriage of justice.

### a. **Petitioner has not demonstrated cause and prejudice to overcome the procedural default of his claims.**

Petitioner attempts to overcome the procedural default of his claims by alleging that his appointed PCRA counsel was ineffective for filing a Turner-Finley "no merit" letter instead of filing a counseled amended PCRA petition.  As previously noted, the Supreme Court has held that a petitioner can establish cause for a procedural defaulted claim by showing that appointed counsel in the initial-review collateral proceeding, where the claim should have been raised, was ineffective under the standard of Strickland.  *See* Martinez, *supra*.  In addition, the petitioner must also demonstrate that the procedurally defaulted claim that appointed counsel did not raise in the initial-review collateral proceeding is a "substantial one."  Whether a claim is "substantial" is a "threshold inquiry" that "does not require full consideration of the factual or legal bases adduced in support of the claims."  Miller-El v. Cockrell, 537 U.S. 322, 327, 336 (2003).

In his brief in support of his Petition, Petitioner does not discuss or analyze PCRA counsel's performance under Strickland.  In fact, he provides no discussion or analysis as to why he believes PCRA counsel was ineffective other than the fact that counsel filed a no merit letter. Bald assertions and conclusory allegations like this one, without supporting a claim of a constitutional violation, do not provide sufficient grounds for finding cause to excuse the procedural default of a claim.  *See* Mayle v. Felix, 545 U.S. 644, 649 (2005) (quoting the Advisory Committee's Note on Rule 4 of the Rules Governing Section 2254 Cases); *see also* Keys v. Attorney General, 2013 WL 8207554, at *17 (E.D. Pa. Feb. 15, 2013) (finding no cause

to excuse a procedurally defaulted claim when the petitioner failed to discuss or analyze his claim that PCRA counsel was ineffective under Strickland for filing a no merit letter).

Moreover, district courts within Pennsylvania have found that appointed PCRA counsel was not deficient under similar, if not identical facts. *See* Bibbs v. Glunt, 2016 WL 5539758, at *8 (E.D. Pa. April 13, 2016) (citing cases). For example, the district court in Edwards v. Walsh, 2013 WL 4457365 (E.D. Pa. Aug. 21, 2013), found that the petitioner's claims raised in his federal habeas petition were procedurally defaulted because the petitioner failed to exhaust the claims and could no longer do so. Id. at *4. The petitioner alleged that his appointed PCRA counsel was ineffective for filing a no merit letter and requesting to withdraw as counsel. Id. at *1, n.1. The district court analyzed whether PCRA counsel's performance was deficient, sufficient to excuse the default of the petitioner's claims. Id. The district court acknowledged that PCRA counsel did not raise the defaulted claims but noted that counsel filed a brief discussing the viability of the claims that the petitioner raised in his *pro se* PCRA petition and determined that there were no meritorious issues. Id. It stated that the "state court agreed to allow withdrawal, but only after conducting the requisite inquiries, that is, the state court was required to 'conduct an independent review of the record and must agree with counsel that the petition is meritless before dismissing the petition.'" Id. The court then concluded that "[s]uch conduct on the part of [the p]etitioner's PCRA counsel does not indicate deficient performance under Strickland" and therefore could not establish cause for the procedural default of the petitioner's habeas claims under Martinez [v. Ryan, 132 S. Ct. 1309 (2012)]. Id.

Finally, it was Petitioner himself who failed to pursue the procedurally defaulted claims following the state court's order that allowed appointed PCRA counsel to withdraw. In other words, while Petitioner was acting *pro se*, he himself abandoned the procedurally defaulted

11

claims on collateral review by failing to pursue them in his objections to the court's notice of intent to dismiss.[5]  Consequently, appointed PCRA counsel cannot be labeled ineffective for failing to pursue the procedurally defaulted claims at issue here because it was Petitioner himself who abandoned them in his initial-review collateral proceeding.[6]  *See* Edwards, 2013 WL 4457365, at \*5; *see also* Edwards v. Carpenter, 529 U.S. 446, 450-54 (2000) (a petitioner can procedurally default the claim of ineffectiveness that he is relying upon to establish cause for the default of another claim).  *See also*, Haggie v. Coleman, 2014 WL 5795602, at \*8 (W.D. Pa. Oct. 6, 2014) (petitioner cannot overcome his default because any failure to properly raise and brief his PCRA claims is attributable to him since he was proceeding *pro se*).  Additionally, the undersigned notes that Petitioner actually raised two claims of PCRA counsel's ineffectiveness on appeal from the denial of PCRA relief, neither of which were PCRA counsel's failure to raise the procedurally defaulted claims at issue here.

For these reasons, Petitioner has not demonstrated cause and prejudice to excuse the procedural default of claims 1 through 3 and 4(b) of his Petition.

> **b. Petitioner has not demonstrated a fundamental miscarriage of justice to overcome the procedural default of his claims; *i.e.*, that he is actually innocent.**

---

[5] Issues raised in an appellant's *pro se* objection to a PCRA court's Rule 907 notice may be raised on appeal.  *See* Commonwealth v. Pitts, 981 A.2d 875, 879 n.3 (Pa. 2009).

[6] Furthermore, for the reasons set forth in the Respondents' Answer to the Petition (ECF No. 21, pp. 54-73), the undersigned also finds that Petitioner's procedurally defaulted claims do not have "some merit" and therefore are not "substantial," a requirement to show cause for a procedurally defaulted claim of ineffective assistance of counsel.  *See* Martinez, 544 U.S. at 14 (suggesting that courts apply the standard for issuing certificates of appealability in resolving the inquiry into what constitutes a "substantial" claim).

Petitioner also contends that he is actually innocent and therefore it would be a fundamental miscarriage of justice for this Court to not review his procedurally defaulted claims. As stated above, the fundamental miscarriage of justice exception is narrow. The Supreme Court has applied it "to a severely confined category: cases in which new evidence shows 'it is more likely than not that no reasonable juror would have convicted [the petitioner].'" McQuiggin, 133 S. Ct. at 1933 (alteration in original) (quoting Schlup, 513 U.S. at 329). This requires a petitioner to present "evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error." Id. at 1936 (quoting Schlup, 513 U.S. at 316).

The focus under the "actual innocence" exception is on establishing actual innocence as opposed to legal innocence. *See* Schlup, 513 U.S. at 327-28. An actual innocence claim must be based on "new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial." Id. at 324. In this Circuit, evidence is "new" under the Schlup standard only if it was not available at the time of trial and could not have been discovered earlier through the exercise of due diligence, except in situations where the evidence was not discovered due to the ineffectiveness of counsel. *See* Houck v. Stickman, 625 F.3d 88, 93-94 (3d Cir. 2010).

In support of his "actual innocence" claim Petitioner states that his trial counsel withheld exculpatory evidence that would have exonerated him and was therefore ineffective for advising Petitioner to plead guilty. He relies on the following documents to support his claim: (1) Supplemental Report on DNA Retrieval; (2) Serology Report; (3) DNA Results; (4) Emergency Medical Services Report; (5) Autopsy Report – Dr. Williams; and (6) Child Advocacy Center – Dr. Squires. (ECF No. 9, Pet'r App. B-G.)

First, Petitioner does not explain how any of the documents he relies on would have resulted in no reasonable juror convicting him of Criminal Homicide. Moreover, none of the documents are "new" evidence as they were all available to Petitioner prior to, and during, his guilty plea proceeding, and they are all documents that the Commonwealth would have relied on to establish Petitioner's guilt had Petitioner's case proceeded to trial. In other words, they would have been more harmful, than helpful, to the defense.

Petitioner also alleges in his actual innocence claim that his trial counsel told him to deny that he was taking medication on the day of his guilty plea and also told him to deny that he had any mental illnesses. In support of this claim he relies on (1) his Guilty Plea form dated April 16, 2010, (2) his Guilty Plea form dated April 23, 2010, and (3) a medical evaluation report by Dr. Burnstein. (ECF No. 9, Pet'r App. J, R, S.) None of these documents, however, are "new" evidence and none establish his innocence. The Guilty Plea forms are discussed in detail in the next section, and for the reasons stated in that section they do not establish Petitioner's actual innocence.

The report referred to by Petitioner was issued by Dr. Burnstein on February 10, 2009. Dr. Burnstein is an expert in the field of forensic psychiatry, and, pursuant to the request of Petitioner's trial counsel, he conducted a psychiatric examination on Petitioner for one hour and thirty minutes on October 17, 2008. The report details Petitioner's social, criminal and psychiatric history and it concludes with Dr. Burstein's opinion that Petitioner "is mentally capable of understanding the charges against him and cooperating in his defense." (ECF No. 10, pp.80-86.) The report was actually admitted by trial counsel at Petitioner's guilty plea proceedings. (N.T. 4/23/10, p.39.)

Petitioner fails to explain why he thinks this report establishes his innocence and the undersigned can think of no other reason other than it states that Petitioner "was under the influence of his depressive illness and affected by alcohol and drug abuse" on the night the victim was killed. To the extent Petitioner contends that this evidence somehow demonstrates that he had diminished capacity at the time of the murder, he is reminded that "the miscarriage of justice exception is concerned with actual as compared to legal innocence." Sawyer v. Whitley, 505 U.S. 333, 339-40 (1991). Dr. Burnstein's report does not demonstrate that Petitioner is innocent of murdering the victim.

Simply put, Petitioner has not presented any "new" evidence to satisfy the actual innocence requirement of the fundamental miscarriage of justice exception. As such, his claims remain procedurally defaulted.

**2. Petitioner is not entitled to habeas relief on the merits of his exhausted claim.**

The only claim in the Petition that is somewhat exhausted, and therefore not procedurally defaulted, is Petitioner's claim that his plea was involuntary, unknowing, and unintelligent because he was under the influence of psychotropic medications at the time of his guilty plea.[7] In the state courts Petitioner challenged only the voluntariness of his plea, and while he technically waived the issue by failing to raise it on direct appeal, where it should have been raised in the first instance,[8] the Superior Court nevertheless found that Petitioner's plea was

---

[7] It is unclear from the record, but it appears that these medications included Thorazine, Sinequan, Remeron, and Risperidone. (ECF No. 8, p.24.)

[8] The undersigned notes that this claim is procedurally defaulted because it was not properly presented to the state court on direct appeal (which Petitioner did not file). However, the Superior Court nevertheless reviewed the claim on its merits. While that does not excuse the

voluntary because during his plea hearing he responded that he was clear-headed and was not taking any medication that might affect his free will, and he was "bound" by these statements. (ECF No. 21-4, p.32.)

As with any waiver of a constitutional right, the Due Process Clause of the United States Constitution requires that a guilty plea be made knowing, voluntary and intelligent. Boykin v. Alabama, 395 U.S. 238, 243 (1969). The "long standing test for determining the validity of a guilty plea is 'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'" Hill v. Lockhart, 474 U.S. 52, 56 (1985) (quoting North Carolina v. Alford, 400 U.S. 25, 31 (1970)).

Whether a plea of guilty is voluntary for purposes of the federal constitution is a question of federal law. Marshall v. Lonberger, 459 U.S. 422, 432 (1983). To determine whether a guilty plea represents a voluntary and intelligent choice, a reviewing court must examine the totality of the circumstances surrounding the plea. Brady v. United States, 397 U.S. 742, 749 (1970). To ensure that a plea is both knowing and voluntary, it cannot have been induced through misrepresentation or coercion, Brady, 397 U.S. at 750, the defendant must have notice of the nature of the charge(s) against him, Henderson v. Morgan, 426 U.S. 637, 645 (1976), the defendant must have an understanding of the law in relation to the specific facts at issue, McCarthy v. United States, 394 U.S. 459, 466 (1969), and the defendant must appreciate the consequences of the plea, *i.e.*, he must understand the rights he is surrendering through his plea. In McCarthy, the Supreme Court held that the most efficient method of insuring the intelligent, voluntary nature of a guilty plea is through the colloquy between the trial judge, the defendant,

procedural default, the undersigned will nonetheless analyze this claim as an alternative basis for dismissal.

and the defendant's attorney. 394 U.S. at 464-467. Such a colloquy should establish that the defendant understood the nature of the charges, his right to a jury trial, the acts sufficient to constitute the offense for which he is charged, and the permissible range of sentences. Boykin, 395 U.S. at 244, n.7.

A habeas petition challenging the voluntary nature of his or her guilty plea faces a heavy burden. Zilich v. Reid, 36 F.3d 317, 320 (3d Cir. 1994). "[T]he representations of the defendant, his lawyer, and the prosecutor at [a plea] hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations made in open court carry a strong presumption of verity." Id. (citing Blackledge v. Allison, 431 U.S. 63, 74–74 (1977)).

Because the Superior Court denied Petitioner's claim on the merits, this Court's review of it is very limited. It is not for this Court to decide whether the Superior Court's decision was right or wrong. Rather, under AEDPA's standard of review, as codified in relevant part at 28 U.S.C. § 2254(d)(1), it is Petitioner's burden to show that the Superior Court's adjudication was "contrary to, or involved an unreasonable application of clearly established Federal law as determined by the Supreme Court of the United States," or as codified in relevant part at 28 U.S.C. § 2254(d)(2), was an "unreasonable determination of the facts in light of the evidence presented."

Here, Petitioner has not met his burden. The Superior Court's rejection of this claim was not "contrary to" or an "unreasonable application" of Supreme Court precedent requiring that a guilty plea be a knowing, voluntary and intelligent act, undertaken with sufficient awareness of the relevant circumstances and likely consequences. Despite the fact that the Superior Court did not specifically cite to federal law when it found that Petitioner's plea was indeed voluntary, it is

clear that they understood that a guilty plea must be knowing, intelligent and voluntary.[9]  The

Superior Court did not ignore or misapprehend Federal law and therefore its decision was not

contrary to clearly established Supreme Court precedent.

Similarly, its decision was not an unreasonable application of established Supreme Court

precedent.  The Superior Court found Petitioner's claim "belied" by the statements he made in

his written and at his oral plea colloquies.  The United States Supreme Court has stated that

statements made in court have a "presumption of verity" and that the "subsequent presentation of

conclusory allegations unsupported by specifics is subject to summary dismissal, as are

contentions that in the face of the record are wholly incredible."  Blackledge, 431 U.S. at 73-74.

In this case, Petitioner relied heavily on the fact that on the Guilty Plea form dated April 16,

2010, he indicated that he was taking medicine that affected his thinking and free will.  However,

on the Guilty Plea form dated April 23, 2010, which was the day of the plea, Petitioner indicated

that he was not taking any medication that affected his thinking and free will, he did not have

any mental illness that would affect his ability to understand his rights or affect the voluntary

nature of his plea, and he had ingested no narcotics or alcohol in the last forty-eight hours.  (ECF

No. 21-6, p.19.)  On this same form, Petitioner acknowledged that no one promised him anything

other than the terms of a plea bargain, no one forced him or attempted to force him to plead

guilty, no threats were made to him in an effort to have him plead guilty, and he was entering the

guilty plea of his own free will.  (ECF No. 21-6, pp.18-19.)  Petitioner also indicated that he was

satisfied with the legal advice and legal representation of his attorney.  (ECF No. 21-6, p.19.)

During the oral colloquy both of Petitioner's attorneys informed the court that they felt his

---

[9] Although the Superior Court did not cite directly to Supreme Court case law, "[a] state court decision is not contrary to ... clearly established Federal law simply because the [state] court did not cite [applicable Supreme Court precedent]."  Mitchell v. Esparza, 540 U.S. 12, 16 (2003).

decision to plead guilty was knowing, intelligent, and voluntary. (N.T. 4/23/10, pp.8-9.) When asked by the court "[a]nd are you clear-headed today?" Petitioner responded, "[y]eah." (N.T. 4/23/10, p.5.) While "the barrier of a plea or sentencing proceeding record . . . is not invariably insurmountable," Blackledge, 431 U.S. at 74, Petitioner's bald and conclusory allegation that he was on psychotropic medication at the time his plea was entered is in itself insufficient to demonstrate that he was not fully aware of the direct consequences of his plea. *See* Mabry v. Johnson, 467 U.S. 504 (1984). The Supreme Court has stated that when a defendant is "fully aware of the direct consequences" of his guilty plea, then it "must stand unless induced by threats (or promises to discontinue improper harassment), misrepresentations (including unfulfilled or unfillable promises), or perhaps by promises that are by their nature improper as having no proper relationship to the prosecutor's business (*e.g.*, bribes)." 467 U.S. at 509. Petitioner presented no evidence that his plea was the product of "misunderstanding, duress or misrepresentation by others." Blackledge, 431 U.S. at 75.

Additionally, the Superior Court's decision was not an unreasonable determination of the facts in light of the evidence presented. Despite his statements made in his oral and written plea colloquies, Petitioner failed to explain to the state court, and to this Court, how ingestion of these psychotropic drugs prior to his guilty plea affected the voluntariness of his plea. As Respondent points out, Petitioner was able to communicate with the court during the guilty plea colloquy, and responded without hesitation to the questions being asked of him in the Guilty Plea form and no indication that Petitioner indicated to the court that he had a problem completing the form. Petitioner admitted in the form, and at the plea proceedings, that he was pleading guilty because he was guilty of the crimes charged, that his decision to plead guilty was not affected by any medication he was taking, if any, and that no one, including his attorney, had coerced or forced

him into entering a guilty plea.  Petitioner also acknowledged that he was clear-headed and had

not taken any narcotics or alcohol in the last forty-eight hours of entering into the plea.  (N.D.

4/23/10, p.5; ECF No. 21-6, p.19.

To the extent Petitioner is entitled to a merits review of this claim, he has not met his

burden under 28 U.S.C. § 2254(d).  Therefore, it should be denied.

### D.     **Certificate of Appealability**

A court should issue a Certificate of Appealability where a petitioner makes a

"substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  A

petitioner meets this burden by showing that "reasonable jurists would find the district court's

assessment of the constitutional claims debatable or wrong."  Slack v. McDaniel, 529 U.S. 473,

484 (2000).  The undersigned finds that jurists of reason would not find it debatable whether

Petitioner's claims are unexhausted and procedural defaulted, nor would jurists of reason find it

debatable whether Petitioner has made a substantial showing of the denial of a constitutional

right.  Therefore, the Court should deny a Certificate of Appealability.

## III.     **CONCLUSION**

For the reasons set forth above, it is respectfully recommended that the Petition be denied

and that a Certificate of Appealability also be denied.

In accordance with the applicable provisions of the Magistrate Judges Act, 28 U.S.C. §

636(b)(1)(B) & (C), and Rule 72.D.2 of the Local Rules of Court, Petitioner shall have fourteen

(14) days from the date of the service of this report and recommendation to file written

objections thereto.  Petitioner's failure to file timely objections will constitute a waiver of his

appellate rights.

Dated:  May 16, 2017.

Lisa Pupo Lenihan
United States Magistrate Judge

cc: Clinton J. Smith
    JM-8630
    SCI Mahanoy
    301 Morea Rd.
    Frackville, PA 17932


    Counsel for Respondents
    (Via CM/ECF electronic mail)